```
                                                                    FILED
                                                          2019 Jul-17  PM 01:49
                                                          U.S. DISTRICT COURT
                                                              N.D. OF ALABAMA
```

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **TINA MARIE HODGES,** | } |
| Plaintiff, | } |
| v. | } Case No.: 4:17-cv-00677-RDP |
| **NANCY A. BERRYHILL,** **ACTING COMMISSIONER OF SOCIAL SECURITY,** | } |
| Defendant. | } |

## MEMORANDUM OF DECISION

Plaintiff Tina Marie Hodges ("Plaintiff" or "Hodges") brings this action pursuant to Sections 205(g) of the Social Security Act ("the Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB"). *See* 42 U.S.C. §§ 405(g). Upon review of the record and briefs submitted by the parties, the court finds that the Commissioner's decision is due to be affirmed.

**I.     Proceedings Below**

On August 14, 2014, Plaintiff protectively filed a Title II application for disability insurance benefits alleging disability beginning March 19, 2013.[1] (R. at 53, 169, 249). The claim was denied on November 3, 2014. (R. at 53, 175-79). On November 13, 2014, Plaintiff filed a written request for a hearing in front of an Administrative Law Judge ("ALJ"). (R. at 53, 184-85, 188-90). ALJ Walter Lassiter, Jr. conducted the requested hearing on February 19, 2016. (R. at 53,

---

[1] Hodges had previously filed a Title II application for disability insurance benefits on April 21, 2011. (R. 119). That application was denied by the ALJ on March 18, 2013. (R. 140). Many of the medical records predate March 2013.

1

75-115, 211, 218, 239). In his decision dated July 28, 2016, the ALJ determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. (R. at 53, 70). The Appeals Council denied Plaintiff's request for review on February 21, 2017. (R. at 1-6, 44). This denial made the ALJ's decision the final decision of the Commissioner and a proper subject for this court's appellate review.

## II. Facts

Plaintiff Tina Marie Hodges, born on August 17, 1965, was 51 years old at the time of the hearing. (R. 82, 249, 362). She completed high school and held positions with Liberty National Insurance Company, What-A-Burger, Willy-T's, and Taco Bell in capacities ranging from "callback operator" with Liberty National to cashier and managerial roles with the various fast food restaurants. (R. at 57, 82-89, 268, 283). She left her position with Liberty National in 2005 due to a traumatic injury arising out of domestic violence. (R. at 57, 85, 283).[2] Later, Plaintiff worked for Willy T's, a fast food chicken restaurant, as a cashier for about a year. (R. at 86). Plaintiff then worked as a cashier at What-A-Burger, moving into a management position. (R. at 57, 86). Plaintiff lost her job with What-A-Burger due to her inability to maintain the night shift. (R. at 87-88). Plaintiff then worked at Taco Bell, again attaining a management position. (R. 57, 88-89). However, Plaintiff missed excessive amounts of time at Taco Bell and was subsequently fired. (R. at 57, 89). She cited depression as the reason for consistently missing work. (*Id.*)

Plaintiff has not worked since March 2011 and claims she has suffered from suicidal thoughts, memory problems, concentration problems, and depression. (R. at 57, 90-93, 249). She has indicated she "mentally cannot be productive." (*Id.*). In the case before this court, Plaintiff

---

[2] Plaintiff testified to suffering major head trauma after being thrown out of the car by her ex-husband. (R. at 85, 93, 307). She was hospitalized for two weeks and underwent facial reconstruction. (R. at 93). The ALJ found that "current treatment records do indicate that the claimant sustained the reported head injuries in 2005." (R. at 63).

2

alleges onset of disability on March 19, 2013 due to the medically determinable impairments of "obesity; distant history of head trauma; history of fibromyalgia; hypertension; bipolar disorder, not otherwise specified with non-compliance; generalized anxiety disorder with non-compliance; and possible personality disorder."[3] (R. at 53, 55, 262).

Throughout the period of her alleged disability, Plaintiff was treated and/or assessed by numerous physicians, two counselors, and multiple nurse practitioners. (R. at 57-65, 336-689). She received various diagnoses, including: obesity, fibromyalgia, hypertension, pedal edema, pitting edema, bipolar disorder, generalized anxiety disorder, major depressive disorder, panic disorder, post-traumatic stress disorder ("PTSD"), pineal cyst, and borderline personality disorder. (R. at 58, 342, 368, 380-82, 385, 408, 412, 425, 441, 537, 540). Although Plaintiff consistently presented with symptoms of musculoskeletal pain, tremor, anxiety, and fatigue, it was frequently noted that she had normal range of motion in all four extremities, no constitutional or musculoskeletal issues besides pain and stiffness, no joint involvement, and was otherwise physically normal.[4] (R. at 340, 345-48, 350, 368-74, 380-85, 405, 435, 465, 470, 546, 556, 559, 563, 569, 573, 576). It was also noted that Plaintiff's tremor and gait disturbances resulted either from her pineal gland cyst or were "related to the extrapyramidal effects of Haldol," a drug Plaintiff was prescribed until treating physicians discontinued it. (R. at 390-94, 397).

Plaintiff's treating physicians performed extensive diagnostic testing including several CT scans, MRIs, and a Transthoracic Echocardiogram. (R. at 377, 397-99, 402, 423, 440, 441, 472,

---

[3] Plaintiff cited other impairments in addition to those supported in the record. However, the ALJ found "no evidence of current diagnosis and treatment of any type for the alleged impairments of memory loss, severe headaches, Parkinson's Disease, back injuries, seizures, tremors, congestive heart failure, and schizophrenia." (R. at 56). Furthermore, the ALJ determined that there was "no evidence of current use or abuse of substances since the amended onset date [of March 19, 2013]." (R. at 56).

[4] Dr. Phillips treated Plaintiff on April 21, 2011 and noted that "patient comes in with shaking right hand holding a water bottle. The left hand has no tremor until I talked to her about the left hand and started evaluating it and the tremor hops into her left hand, even though the right hand is staying in the same position." (R. at 405).

3

485). The results of these tests were negative/unremarkable except for a small cystic lesion involving the pineal gland that did not require surgery, trace mitral regurgitation and mild tricuspid regurgitation in the heart, nonspecific subcortical white matter hypoattenuation in the frontal lobes of the brain, mild retrolisthesis of L2 and 3, mild levoscoliosis of the lumbar spine, and multilevel degenerative changes most significant at L4-5 and L5-S1. (*Id.*)

Plaintiff's activities of daily living up to and at the time of the ALJ hearing included interacting with her husband, watching television, and cooking. (R. at 94-97). Plaintiff testified that she only occasionally leaves the house, must be reminded to bathe, often stays in her pajamas all day, and is reluctant to interact with people besides her husband. (*Id.*) Plaintiff clothes, bathes, and cooks for herself.[5] (R. at 95-96).

During the hearing, when given hypotheticals with factors and limitations similar to those indicated by Plaintiff's residual functional capacity ("RFC"), the Vocational Expert ("VE") testified that someone similarly situated to Plaintiff would be able to perform her past work. (R. at 110-12). The VE further noted that Plaintiff could perform all past fast food work, but not insurance clerk work, if "impairment, limitation, medication, medication side effects and even allowance for fatigue . . . collectively or individually would limit this individual to simple, routine and repetitive work activity." (R. at 112). However, the VE also noted that Plaintiff would likely lose all of her previous jobs if she was unable to interact with and respond appropriately to the public. (R. at 113).

### III.  ALJ Decision

Disability under the Act is determined using a five-step test. 20 C.F.R. § 404.1520(a)(4). First, the ALJ must determine whether a plaintiff is engaging in substantial gainful activity. *Id.* §

---

[5] When asked to identify her "Long Term Recovery Goal," Plaintiff stated, "I will have my disability. My husband and I will have our own home." (R. at 609, 627).

404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. *Id.* § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. *Id.* § 404.1572(b). If the ALJ finds that a plaintiff engages in substantial gainful activity, then the plaintiff cannot claim disability. *Id.* § 404.1520(b). Second, the ALJ must determine whether a plaintiff has a severe medically determinable impairment ("MDI") or a combination of medically determinable impairments that significantly limits the plaintiff's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii). Absent such impairment, a plaintiff may not claim disability. *Id.* Third, the ALJ must determine whether a plaintiff's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See id.* §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the plaintiff is declared disabled. *Id.* § 404.1520(a)(4)(iii).

If a plaintiff does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine a plaintiff's residual functional capacity ("RFC"), which refers to the plaintiff's ability to work despite her impairments. *Id.* § 404.1520(e). In the fourth step, the ALJ determines whether a plaintiff has the RFC to perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the ALJ determines that a plaintiff is capable of performing past relevant work, then the plaintiff is deemed not disabled. *Id.* If the ALJ finds a plaintiff unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id.* § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether a plaintiff is able to perform any other work commensurate with her RFC, age, education, and work experience. *Id.* § 404.1520(g). Here, the burden of proof shifts from the plaintiff to the ALJ to prove the existence, in significant numbers, of jobs in the national economy

that the plaintiff can do given her RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c).

SSR 12-2p is a regulation designed to "provide guidance on how [to] develop evidence to establish . . . a Medically Determinable Impairment ("MDI") for fibromyalgia . . . and how [to] evaluate [fibromyalgia] in disability claims." 77 Fed. Reg. 43640 (July 25, 2012). Fibromyalgia may be the basis for disability if established by appropriate medical evidence from an accepted medical source, including but not limited to "longitudinal records reflecting ongoing medical evaluation and treatment." *Id.* at 43642. A diagnosis alone cannot serve as the basis for establishing a MDI of fibromyalgia. *Id.* at 43641. Rather, the evidence must document physician-reviewed medical history and physical exams to determine whether "consistent with the diagnosis of fibromyalgia . . . symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's strength and functional abilities." *Id.* Specifically, a claimant must not only be diagnosed with fibromyalgia, but also must meet the criteria outlined in either the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia[6] or the 2010 ACR Preliminary Diagnostic Criteria.[7] *Id.* The five-step test outlined in 20 C.F.R. § 404.1520(a)(4) is not altered under SSR 12-2p. *Id.* at 43643. Fibromyalgia is not a listed impairment. So, under step three, fibromyalgia must medically equal a listed impairment either on its own or in combination with one or more other MDIs. *Id.* If a claimant's fibromyalgia or combination of that condition and another MDI does not medically equal a listed impairment, an RFC assessment will be required. *Id.* Due to the waxing and waning

---

[6] *See* Frederick Wolfe et al., *The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee*, 33 Arthritis and Rheumatism 160 (1990).

[7] *See* Frederick Wolfe et al., *The American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia and Measurement of Symptom Severity*, 62 Arthritis Care & Research 600 (2010).

of fibromyalgia symptoms, the claimant's longitudinal medical and treatment record is considered. *Id.* The usual vocational considerations are applied with the inclusion of symptoms typically associated with fibromyalgia: widespread pain, fatigue, and/or other fibromyalgia symptoms resulting in exertional limitations, nonexertional physical or mental limitations, and/or nonexertional environmental limitations. *Id.* at 43644. Adjudicators must specifically consider the possibility of these limitations, which may "erode [the] occupational base . . . precluding the use of a rule in appendix 2 to direct decision," requiring the use of rules in appendix 2 as a framework and/or a vocational expert. *Id.*

A two-step process governs the evaluation of a claimant's statements regarding symptoms and functional limitations. *Id.* 43643. First, medical signs and findings must show that a plaintiff has "a MDI(s) which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* As fibromyalgia is a MDI, this first step is satisfied by a diagnosis of fibromyalgia. *Id.* Second, the intensity and persistence of a claimant's symptoms and the extent to which those symptoms may restrict ability to work must be evaluated. *Id.* If a claimant's statements are not substantiated by objective medical evidence, "all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms," is considered. *Id.* SSR 96-7p[8] is utilized to determine the credibility of a claimant's statements about the effects of her symptoms on functioning. *Id.* SSR 96-7p requires the ALJ to make "every reasonable effort to

---

[8] SSR 96-7p states in pertinent part: "[W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence . . . [the] individual's symptoms . . . will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record."

obtain available information that could help . . . assess the credibility" of a plaintiff's statements. *Id.*

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from the amended alleged onset date of March 19, 2013 through June 30, 2015, the date last insured. (R. at 55). The ALJ also determined that Plaintiff had the following non-severe medically determinable impairments: obesity; distant history of head trauma; history of fibromyalgia; hypertension; bipolar disorder, not otherwise specified with non-compliance; generalized anxiety disorder with non-compliance; and possible personality disorder. (R. at 55). Plaintiff failed to meet her burden of demonstrating severe impairment and her claim was denied. (*Id.*).

## IV. Plaintiff's Argument for Remand or Reversal

Plaintiff advances several arguments that the ALJ's factual findings are not supported by substantial evidence or correct legal standards. Specifically, Plaintiff argues as follows: (1) the ALJ "failed to conduct a proper analysis of Claimant's fibromyalgia under SSR 12-2p" (Pl.'s Mem., Doc. #14 at 21-35); (2) the ALJ "provided lay interpretation of medical opinion, improperly rejected the opinions of experts provided by the Commissioner without medical support and without showing good cause, failed to state with at least 'some measure of clarity' grounds for decision in repudiating the opinions of Dr. Sathyan Iyer, substituted her own opinion for that of the medical experts, and gave little weight to the opinion of Dr. Iyer without any medical support" (*Id.* at 36); and (3) the ALJ "failed to recontact treating physician." (*Id.* at 36-38). The court addresses each argument, in turn.

## V. Standard of Review

The first issue before this court is whether the record reveals substantial evidence to sustain the ALJ's decision. *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir.

8

1982). The second issue before this court is whether the ALJ applied the correct legal standards. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are final if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Id.* Instead, the district court must review the final decision as a whole and determine if the decision is reasonable and "supported by substantial evidence." *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

For the reasons set forth below, the court finds that substantial evidence supports the ALJ's findings and that proper legal standards were applied. Accordingly, the decision is due to be affirmed.

### A. The ALJ Conducted a Proper Analysis of Plaintiff's Fibromyalgia under SSR 12-2p

Plaintiff claims that the ALJ "failed to conduct a proper analysis" of her fibromyalgia consistent with SSR 12-2p. (Pl.'s Mem., Doc. #14 at 2, 21-35). This argument is unavailing.

The ALJ followed the guidelines of SSR 12-2p in his assessment of Plaintiff's fibromyalgia. (R. at 64-65). The ALJ first recognized the medically determinable impairment of fibromyalgia (R. at 55) and then proceeded to evaluate the "intensity and persistence of the person's pain . . . [to] determine the extent to which the symptoms limit the person's capacity for work." *Id.* at 43643. The ALJ based his conclusions on substantive medical records from licensed physicians in accordance with SSR 12-2p. (R. 64-65).

Plaintiff was diagnosed with fibromyalgia by Dr. Rodney Snead on March 23, 2015 after complaining of musculoskeletal symptoms for two months, including pain in the left side (hip, shoulder, and neck), nausea, abdominal pain, and diarrhea. (R. at 576-78). Although Plaintiff had no focal or sensory weakness and normal gait and station, she was diagnosed with fibromyalgia and given an injection of Celestone and Marcaine. (R. 576-79, 594). The diagnosis of fibromyalgia satisfies the first step in the two-part assessment.

Consistent with step two of the assessment, the ALJ determined that Plaintiff's pain did not impair her functional abilities. (R. at 64). That determination is supported by evaluations conducted by treating physicians evidencing Plaintiff's ability to perform basic work activities.[9] 20 C.F.R. § 404.1520(c). For example, on February 5, 2015, before the official diagnosis, Plaintiff visited Quality of Life complaining of musculoskeletal pain with joint tenderness and spasms. (R. at 573). Plaintiff was advised to apply heat and ice to the affected area 3-4 times per day and to perform gentle stretching exercises. (R. 574). Plaintiff had appropriate mood and affect, despite her allegations of disabling pain. (R. 64, 573). On the date of the diagnosis, Plaintiff was again advised to apply heat and ice, and to minimize the motion of the injured area and to avoid lifting,

---

[9] The term "basic work activities" refers to the functioning proficiency required for most jobs. Examples of the physical abilities required for most jobs include walking, standing, sitting, lifting, pulling, pushing, reaching, carrying, and handling, etc. *See* 20 C.F.R. § 404.1521(b).

straining or sudden twisting. (R. 579, 585). Less than a month after the diagnosis, Plaintiff reported that "Norco helps her significantly improving quality of her life." (R. 669).

On October 22, 2015, Plaintiff reported that her fibromyalgia was "stable on current dose of Narco." (R. 648). On November 16, 2015, Plaintiff complained of worsening fibromyalgia with "losing use of hands and swelling really bad and joints stiff when press on knee joints they are so sore and aching." (R. 644). However, on physical exam Plaintiff presented with normal gait and station and was ambulating normally without evidence of significant functional restriction. (R. 64, 646). Plaintiff was informed that the medication should keep her pain level below a 5 out of 10 "so that the patient can perform activities of daily living on a consistent basis." (R. 646). Various other medical notes evidence Plaintiff's compliance with the Narco treatment and normal gait and station throughout medical treatment. (R. 647-89). No medical notes indicate additional work limitations. (*Id.*).

The ALJ reviewed these medical records and noted that none of Plaintiff's treating physicians opined that Plaintiff had functional restrictions related to fibromyalgia. (R. at 65, 589-639). These assessments of Plaintiff's treating physicians supported the ALJ's holding that Plaintiff did not meet her burden of proving a severe impairment. (R. at 65). *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (holding that the severity of a medically determinable impairment must be determined with regard to the effect of the impairment on a plaintiff's ability to work); *Klaes v. Comm'r*, 719 Fed. Appx. 893, 897 (11th Cir. 2017) (holding that "even if fibromyalgia explained [claimant's] pain, that alone does not compel a finding of disability"); *Davis v. Barnhart*, 186 Fed. Appx. 965, 967 (11th Cir. 2001) (holding that the claimant bears the burden of proving that she has a severe impairment or combination of impairments); *Hennes v. Comm'r*, 130 Fed. Appx. 343, 348 (11th Cir. 2005) (holding the medical

evidence did not confirm the severity of claimant's alleged pain arising from fibromyalgia, and claimant failed to present objective evidence showing that fibromyalgia was of such severity that it reasonably could be expected to give rise to alleged pain); *Horowitz v. Comm'r*, 688 Fed. Appx. 855, 863-64 (11th Cir. 2017) (holding that the ALJ properly considered objective medical findings in case involving claimant with fibromyalgia where claimant also alleged other impairments).

The court finds that the ALJ properly evaluated Plaintiff's fibromyalgia claim in accordance with SSR 12-2p, and his findings are supported by substantial evidence. For this reason, the decision of the Commissioner is due to be affirmed.

### B. The ALJ Properly Weighed the Medical Opinions of the Consulting Physician[10]

Plaintiff argues that the ALJ improperly provided lay interpretation of medical opinions and improperly rejected the opinions of medical experts. (Doc. #14 at 1, 36). Specifically, Plaintiff argues that the ALJ improperly gave little weight to the findings of consultative examiner Dr. Iyer Sathyan. (R. 67, 556-58).

An ALJ's weighting of a medical source's opinion depends on three factors: (1) the medical source's relationship with the claimant, (2) the evidence the medical source presents to support his opinion, and (3) the degree of consistency between the medical source's opinion with the medical

---

[10] Plaintiff's initial Memorandum in Support of Disability (Doc. #14) mentions that "[t]he ALJ failed to state with 'some measure of clarity' grounds for decision in repudiating the opinions of Dr. Morton Rickless" and "[t]he ALJ substituted her own opinion for that of the medical experts." (Doc. #14 at 1, 36). However, "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). "[A]n appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (quotation marks omitted). Plaintiff's brief has done nothing to advance her stated arguments. Because perfunctory argument gives neither the Commissioner nor the court any guidance about Plaintiff's argument, those arguments are deemed abandoned. *See Singh*, 561 F.3d at 1278 ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue . . . ."); *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

evidence in the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c)(2). A treating medical source is defined as a medical source that has or has had an ongoing treatment relationship such that the medical evidence shows that a plaintiff sees or has seen the source with a frequency consistent with accepted medical practice for the type of treatment. 20 C.F.R. § 404.1502. Under the "treating physician rule," a treating physician's opinion is entitled to substantial weight unless good cause is shown for not crediting it. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Plaintiff does not argue that Dr. Sathyan was her treating physician. (Doc. #14 at 36). Therefore, the ALJ was not bound to afford Dr. Sathyan's opinion substantial or considerable weight. *See Phillips*, 357 F.3d at 1240 (citing *Lewis*, 125 F.3d at 1440). Instead, the ALJ evaluated the medical opinion of Dr. Sathyan as a consulting physician and noted inconsistencies with the findings of Dr. Sathyan's report. (R. at 67, 555-58). Specifically, Dr. Sathyan determined that Plaintiff had "full range of motion of all the major joints without any restriction," but later opined that "she could have some impairment functions involving bending and lifting." (R. at 557-58). The doctor also noted that Plaintiff "had normal gait (even though she could not walk on her heels and tiptoes and could only squat partially), had no significant abnormalities in her extremities, had no motor or sensory defects, had normal muscle power in the upper and lower extremities, and had normal grip strength and opposition functions." (*Id.*). While Dr. Sathyan did note that Plaintiff had "tenderness over the suprascapular, paraspinal muscles, and the lumbar area," these findings do not support the conclusion that Plaintiff has a functional restriction in the areas of bending and lifting. (*Id.*)

Where a medical opinion is inconsistent with examination notes and other medical evidence of record, it is entitled to little weight. *See* 20 C.F.R. § 404.1527(d)(3) ("The more a

medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion."); *see also Crawford v. Commissioner of Social Security*, 363 F.3d 1555, 1558-60 (11th Cir. 2004) (holding that a physician's opinion was due little weight as "inconsistent with his own treatment notes" and "unsupported by the medical evidence"). Therefore, the ALJ's finding that Dr. Sathyan's opinion was entitled to little weight is supported by substantial evidence.[11] Plaintiff's second ground for reversal is due to be denied.

### C. The ALJ Fulfilled his Obligation to Develop a Complete Record

Plaintiff claims that the ALJ erred in "failing to recontact treating physician." (Pl.'s Br., Doc. #14 at 36). Although Plaintiff does not specify which physician the ALJ allegedly erred by failing to recontact,[12] this argument is unsupported for the reasons explained below.

In making disability determinations, the Commissioner has an obligation to develop a full and fair record and evaluate all evidence. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Where there is contradictory evidence, the Commissioner weighs the evidence to reach his decision. *Id.* If, after weighing the evidence, the Commissioner cannot reach a determination, then he may seek additional information and recontact the physicians. 20 C.F.R § 404.1527(c); *see Johnson v. Barnhart*, 138 F. Appx. 266, 270-71 (11th Cir. 2005). The ALJ does not have a duty to further develop the record unless evidentiary gaps exist sufficient to prejudice the plaintiff. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("However, there must be a showing of

---

[11] And of course, the ultimate conclusion as to disability is one which is reserved exclusively for the Commissioner to make. 20 C.F.R. §§ 404.1527, 416.927; *Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 693, 697 (11th Cir. 2006).

[12] Having raised this issue in a perfunctory manner, it is waived. *Sanchez v. Comm'r*, 507 Fed. Appx. 855, 856 n. 1 (11th Cir. 2013) (holding claimant waived arguments by not expressly challenging the ALJ's findings). *See also* footnote 10, *supra*.

14

prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record."). At all times, a claimant bears the burden of producing evidence in support of his disability. *Ellison,* 355 F.3d at 1276; *see* 20 C.F.R. § 416.912(a) (stating that a claimant "must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. § 416.912(c) (stating "you must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled.").

Plaintiff has failed to show that the record contains evidentiary gaps resulting in unfairness or clear prejudice. Plaintiff merely speculates that re-contacting a treating medical source might support her disability claim. The fact that Dr. Sathyan's opinion was not supported by his notes does not impose a duty on the ALJ to seek further explanation from Dr. Sathyan. (R. 67, 557-58). The record is "neither incomplete nor inadequate" because it includes all records from treating and non-treating sources for at least the twelve months preceding Plaintiff's date of filing. *See Graham*, 129 F.3d at 1423.

## VII. Conclusion

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 17, 2019.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE